**REID COLLINS & TSAI LLP**
Marc S T Dworsky (State Bar No. 157413)
4450 Via Alegre
Santa Barbara, CA 93110
(626) 429-4022
mdworsky@reidcollins.com

**REID COLLINS & TSAI LLP**
Minyao Wang*
Yonah Jaffe*
420 Lexington Avenue
Suite 2731
New York, NY 10170
(212) 344-5200
mwang@reidcollins.com
yjaffe@reidcollins.com

**REID COLLINS & TSAI LLP**
Jonathan M. Kass*
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

*Pro hac vice* applications forthcoming

*Counsel for Petitioner*

**LABATON SUCHAROW LLP**
Ira A. Schochet*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
Facsimile: (212) 883-7064
ischochet@labaton.com

*Additional Counsel*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Application of<br><br>507 SUMMIT LLC,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery For Use In a Foreign Proceeding. | Case No. 23-_____<br><br>**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

      A.     The Company and the Merger .............................................................. 4

      B.     Respondents' Central Roles in the Merger .................................... 8

      C.     The Appraisal Proceeding ..................................................................... 9

ARGUMENT ......................................................................................................................... 10

I.     The Application Satisfies the Statutory Requirements of Section 1782 ............................... 10

      A.     Respondents "Reside" or Are "Found" in This District ............................ 11

      B.     Petitioner Seeks Discovery "For Use" in a Foreign Proceeding ................ 13

      C.     Petitioner Is an "Interested Person" ............................................... 14

II.    The Discretionary *Intel* Factors Weigh in Favor of Granting the Application ..................... 14

      A.     *Intel* Factor I: Respondents Are Nonparticipants in the Appraisal Proceeding ......... 15

      B.     *Intel* Factor II: The Cayman Court Is Receptive to U.S. Judicial Assistance ........... 15

      C.     *Intel* Factor III: The Application Is Not an Attempt to Circumvent Cayman Law ................................................................................................ 17

      D.     *Intel* Factor IV: The Discovery Sought Is Not Unduly Burdensome ......................... 18

CONCLUSION ...................................................................................................................... 21

i

## TABLE OF AUTHORITIES

**Cases**

*Blackmer v. United States*,
   284 U.S. 421 (1932) ........................................................................................ 8

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ............................................................................ 11

*De Leon v. Clorox Company*,
   No. 19-mc-80296-DMR, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2020) ........................ 18, 19, 20

*Ex parte Rigby*,
   No. 13CV0271-MMA MDD, 2013 WL 622235 (S.D. Cal. Feb. 19, 2013) ................................ 11

*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*,
   No. 1:21-mc-1019-CAS (JPR), ECF No. 56 (C.D. Cal. Jan. 6, 2022) ................................ 17, 20

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
   No. 19-mc-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020)........................................ 20

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
   No. 19-mc-80215-WHO(TSH), 2020 WL 820327 (N.D. Cal. Feb. 19, 2020 ............................... 20

*In re Wireless Facilities, Inc. Derivatives Litig.*,
   562 F. Supp. 2d 1098 (S.D. Cal. 2008) ........................................................... 11

*In re Aegean Marine Petroleum Network, Inc. Securities Litigation*,
   529 F.Supp.3d 111 (S.D.N.Y 2021) ................................................................. 12

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding by Athos Asia Event Driver Master Fund*,
   No. 4:21-mc-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ................................ 13

*In re Application of Akebia Therapeutics, Inc. for an Order Granting Leave to Issue Subpoena for the Taking of Discovery Pursuant to 28 U.S.C. 1782.*,
   No. CV 14 80294 MISC, 2014 WL 12845006 (N.D. Cal. Oct. 21, 2014) ............................... 14

*In re Credit Suisse Virtuoso*,
   No. 21-mc-80308-JCS, 2022 WL 1786050 (N.D. Cal. June 1, 2022) ................................... 18

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019) ................................................................... 11, 19

*In re Hattori*,
   No. 21-mc-80236-TSH, 2021 WL 4804375 (N.D. Cal. Oct. 14, 2021) ................................. 18

*In re Hopkins*,
   No. 20-mc-80012-SVK, 2020 WL 733182 (N.D. Cal. Feb. 13, 2020)................................... 17

*In re Illumina Cambridge Ltd.*,
   No. 19MC80215WHOTSH, 2019 WL 5811467 (N.D. Cal. Nov. 7, 2019.................................. 20

*In re Kingstown Partners Master Ltd.*,
   No. 21-MC-691-LTS, 2022 WL 1081333 (S.D.N.Y. Apr. 8, 2022) ................................ 13, 19

*In re Koninklijke Philips N.V.*,
   2018 WL 620414 (S.D. Cal. Jan. 30, 2018)....................................................... 15, 17

*In re Liverpool Ltd. P'ship*,
   No. 21-MC-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021 ....................................... 19

*In re Michael Eric A.B. Mak*,
   No. C 12–80118 SI, 2012 WL 2906761 (N.D. Cal. July 16, 2012)..................................... 14

ii

*In re Mireskandari*,
   No. 12-cv-2865-IEG (DHB), 2012 WL 12877390 (S.D. Cal. Dec. 20, 2012). ...................... 18, 20

*In re MoneyOnMobile, Inc.*,
   2019 WL 2515612  (N.D. Cal. June 18, 2019) ............................................................ 11

*In re Nouvel*, LLC,
   No. 2:22-MC-00004-MCS-E, 2022 WL 2901715 (C.D. Cal. July 22, 2022)............................ 18

*In re Penner*,
   No. 17-cv-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ...................................... 17

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*,
   No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019) ...................................... 18

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018) ................................................................ 17

*In re Republic of Ecuador*,
   No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ................. 15

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
   555 F.2d 720 (9th Cir. 1977).......................................................................... 13, 14

*In re Wallis*, No. 18-mc-80147-DMR,
   2018 WL 5304849 (N.D. Cal. Oct. 24, 2018) ........................................................ 15

*In re: Application of Joint Stock Co. Raiffeinsenbank*,
   No. 16-MC-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016). ................................. 20

*In the Matter of Qunar Cayman Islands Limited v. Athos Asia Event Driven Master Fund et al.*,
   2018 (1) CILR 199 ....................................................................................... 3

*In the Matter of Trina Solar Limited*,
   (Unreported, Grand Court, Segal J, 23 September 2020) ........................................ 3, 16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)................................................................................*passim*

*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*,
   2009 CILR 553 ......................................................................................... 16

*McMahon v. NBS Default Servs., LLC*,
   No. 217CV2493TLNEFBPS, 2018 WL 4328304 (E.D. Cal. Sept. 11, 2018).............................. 12

*Pfaff v. Deutsche Bank AG*,
   2020 WL 3994824 (S.D.N.Y. July 14, 2020) ........................................................... 12

*Qihoo 360 Technology Co. Ltd.*
   2017 (2) CILR 585 ................................................................................... 3, 16

*Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782*,
   No. 18-mc-80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018)........................................ 14

*Re Qunar Cayman Islands Limited*
   (Unreported, CICA, April 10, 2018, CICA No 24 of 2017) ........................................ 16

*Siemens AG v. W. Digital Corp.*,
   No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ..................... 15

**Statutes**

28 U.S.C. § 1782............................................................................................*passim*
California Revenue & Tax Code § 218(a) ................................................................. 11

iii

**Rules**

Fed. R. Civ. P. 26(b)(1)............................................................................................17
Fed. R. Civ. P. 45(d)(1)............................................................................................18

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

507 Summit LLC ("507 Summit" or "Petitioner")[1] hereby respectfully submits this application (the "Application"), pursuant to 28 U.S.C. § 1782 ("Section 1782"), seeking a Court order that authorizes Petitioner to serve the proposed subpoenas (together the "Subpoenas"), attached as Exhibit A and Exhibit B to the Declaration of Minyao Wang (the "Wang Decl."), on Kathleen Chien and Linda Chien (together "Respondents"), and grants any and all other relief to Petitioner as the Court deems just and proper.  The proposed Subpoenas request both document discovery and deposition testimony from Respondents, for use in an appraisal proceeding (the "Appraisal Proceeding") pending in the Cayman Islands in which the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman Court") will determine the fair value of Petitioner's shares in 51job, Inc. ("51job" or the "Company").  51job is a Chinese company, incorporated in the Cayman Islands and listed on the NASDAQ exchange in the United States, that was recently taken private in a $4.3 billion merger transaction (the "Merger") orchestrated by insiders for a share price that Petitioner contends was woefully inadequate.  Petitioner and certain other shareholder (the "Dissenting Shareholders") have dissented under Cayman law with respect to the Merger and are pursuing the Appraisal Proceedings to recover the full value of their 51job shares.

This Application is supported by the Declaration of Samuel Martin Pierce Dawson (the "Dawson Decl."), an attorney admitted to practice law in the Cayman Islands and the Declaration of Minyao Wang, a New York attorney.

Pursuant to Local Rule 7-2(b)(1), Petitioner states that it cannot presently schedule a date and time for a hearing on this Application, should a hearing be necessary, as no judicial assignment has been made.

## PRELIMINARY STATEMENT

Petitioner respectfully submits this Application pursuant to Section 1782 to obtain targeted and important discovery for use in the Appraisal Proceeding.  Both Respondents have had substantial involvement in and knowledge of the Merger.  Respondent Kathleen Chien is a

---

[1] Petitioner 507 Summit is a member of the group of Dissenting Shareholders who formerly held shares in the Company and are parties to the Appraisal Proceeding.

1

co-founder, Chief Operating Officer, long-time "acting" Chief Financial Officer, and shareholder of the Company. She is one of the insiders of the Company and as such she orchestrated the Merger as a "Participant" who would own the now private Company post-Merger.  She was also one of the "Management Continuing Shareholders" whose pre-existing ownership of the Company was not subject to involuntary cancellation as part of the Merger. Ms. Chien signed a legally binding agreement to vote her personal shares in the Company in favor of the Merger, which helped ensure passage of the Merger notwithstanding its glaring substantive and procedural defects. Post-Merger, Kathleen Chien is a shareholder and director of the Company. Respondent Linda Chien, Kathleen's sister, is the Vice President of Investor Relations for the Company.

The evidence that Petitioner seeks from both Respondents is directly relevant to the central issues in the Appraisal Proceeding: the negotiation, re-negotiation, and ultimate approval of the Merger for a price that was significantly lower than what the Buyer Group originally offered in a binding agreement, and the fair value of Petitioner's (and the other Dissenting Shareholders') 51job shares.  The Cayman Court cannot order discovery from Kathleen Chien and Linda Chien because it does not have personal jurisdiction over them.  However, the Cayman Court welcomes litigants to use evidence obtained through U.S. courts by means of Section 1782.  Accordingly, Petitioner submits this Application to obtain discovery from Kathleen Chien and Linda Chien, who are subject to the jurisdiction of this Court, to assist the Cayman Court in determining the fair value of Petitioner's 51job shares.

The Application satisfies the statutory requirements of Section 1782:  (i) Kathleen Chien and Linda Chien "reside" or are "found" in this District because they are residents of this District or, alternatively, they each have sufficient contacts with this District to warrant the exercise of this Court's personal jurisdiction; (ii) the requested discovery is "for use" in a foreign proceeding; and (iii) Petitioner is an "interested person."  28 U.S.C. § 1782(a) (2018).  Furthermore, each of the four discretionary factors, identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc..*, that a district court may consider in deciding whether to grant discovery under Section 1782 weigh decisively in favor of granting the Application. 542 U.S. 241, 244-245 (2004).

*First*, Petitioner cannot use the Cayman legal process to compel discovery from Kathleen Chien and Linda Chien because neither person is a party to the Appraisal Proceeding, nor is either person subject to the jurisdiction of the Cayman Court.

*Second*, the Cayman Court is receptive to assistance afforded by U.S. federal courts through Section 1782.  As Mr. Dawson has explained in his declaration, the Cayman Court has emphasized that judges in appraisal proceedings need access to all available information concerning valuation to determine the fair value of the shares, including evidence from outside the Cayman Islands. Dawson Decl. ¶¶ 13, 15 (discussing *Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585).  For instance, in recent appraisal cases, pursuant to Section 238 of the Cayman Islands Companies Act (as revised) ("Section 238"), the Cayman Court has considered, *inter alia*, documents that may be relevant to the valuation of the shares at issue and evidence as to whether the deal process itself was open, competitive, and fair.  Dawson Decl. ¶¶ 20-21; *In the Matter of Qunar Cayman Islands Limited v. Athos Asia Event Driven Master Fund et al.* 2018 (1) CILR 199 ("it should be a general obligation of the company to search for and produce all documents relevant to fair value."); *see also In the Matter of Trina Solar Limited* (Unreported, Grand Court, Segal J, 23 September 2020) (considering conduct-related factors when determining fair value).

*Third*, the Application is not an attempt to circumvent any restrictions imposed by Cayman law on proof gathering.  Rather, the scope of discovery is broad under Cayman law and Cayman courts welcome the introduction of foreign evidence obtained through Section 1782.  There is no express prohibition against obtaining the evidence sought herein under Cayman law generally or in any of the orders entered to date by the Cayman Court in this Appraisal Proceeding.  Moreover, the requested discovery does not implicate any privilege or protection that would make its admission improper under Cayman law.

*Fourth*, the discovery Petitioner is seeking herein is not unduly intrusive or burdensome. Both Respondents played a critical role in the Merger by virtue of their senior roles at the Company and by virtue of Kathleen Chien's dual capacity as a "Participant" and as a "Management Continuing Shareholder."  Simply put, Kathleen Chien personally orchestrated *and* personally benefited from the Merger. There is no reasonable doubt that both Respondents have documents and

3

information in their possession, custody, or control that is directly relevant to the central issues in the Appraisal Proceeding. The Application therefore requests discovery that is tailored to be directly relevant to the critical issues in the Appraisal Proceeding, such as the fair value of Petitioner's 51job shares, and the processes by which the Company and the Special Committee negotiated, recommended, and approved the Merger; how Kathleen Chien in her personal capacity as "Participant" and as a "Management Continuing Shareholder" participated in the Merger discussions and signed an agreement that legally committed her to support the Merger; why the Company permitted the Buyer Group to renege on an earlier offer which, while still not providing fair value to Dissenting Shareholders, was materially superior to the Merger proposal that was ultimately consummated; and what Linda Chien knew about the formulation and evolution of the Merger process and the Company's communications with non-insider shareholders, both in connection with her role as a senior Company officer and by virtue of her personal relationship with Kathleen Chien.

The Application satisfies the statutory requirements of Section 1782, the *Intel* factors, and is fully consistent with the policies behind Section 1782.  Accordingly, the Application should be granted.

## FACTUAL BACKGROUND

### A.    The Company and the Merger

Based in Shanghai and founded in 1998, 51job is a leading provider of human resources services in China.  The Company's online recruitment platforms are well-known throughout the global Chinese-speaking world.  Prior to the Merger, 51job's shares were listed (through American Depository Receipts) on the NASDAQ exchange under the symbol "JOBS."

In September 2020, during the height of the COVID-19 pandemic, DCP Capital Partners II, L.P. (collectively with its affiliates, "DCP"), an Asian private equity firm, made an offer to take the Company private for $79.05 per share.  Wang Decl. Ex. C at 77-78.  In response, the Company formed a special committee (the "Special Committee"), consisting of two purportedly independent directors, Li-Lan Cheng and Eric He, to evaluate and consider the proposal.  *Id.*  at 79.  Following its formation, the Special Committee retained legal counsel and Duff & Phelps as its financial

4

advisor.  *Id* at 79-80.  On May 1, 2021, counsel for DCP requested the Special Committee's consent to form a buyer consortium (the "Buyer Group") that included DCP, Ocean Link Partners ("Ocean Link") and Mr. Rick Yan, the Company's director, CEO and president.  *Id.* at 87.  On May 4, 2021, the Special Committee granted consent to form the Buyer Group.  *Id.*  On the same day, DCP updated its offer to reflect the additional buyers.  *Id.*  However, the Merger consideration for the updated offer remained at $79.05 per share.  *Id.*  Recruit Holdings Co., Ltd. ("Recruit"), a Japanese online recruitment company that held a 35% stake in the Company, later signed an agreement with the Buyer Group and the Company to support the Merger, in return for the ability to convert a substantial portion of its then current holding of 51job common stock into the ability to participate in the upside of the new entity formed by the Merger. *See* Wang Decl. Ex. H.

     51job and the Buyer Group, with the legally binding support from Recruit, signed a Merger agreement on June 21, 2021, to take the Company private for the original offer price of $79.05 per share.  *See* Wang Decl. Ex. C at 95.  Duff & Phelps provided a fairness opinion in support of the Merger. *Id*. at 131.  The fairness opinion "estimated the value of each ADS [of the Company] to range from US$73.18 to US$86.94."  *Id.*

     Petitioner and other Dissenting Shareholders in the Appraisal Proceeding contend that this proposed price of $79.05 per share severely undervalued the Company and was opportunistically timed to take advantage of the temporary economic dislocation caused by COVID-19 to deprive minority shareholders of the fair value of their ownership stakes in the Company. [2]  The Merger proposal contained glaring procedural deficiencies.  For example, the Merger agreement did not require approval by a majority of the minority shareholders ("MoM Protection"), a common corporate law device used to protect minority shareholders from controlling shareholders.  *See id.* at 91 and 92 ("Upon further discussions, the Special Committee decided to forgo the 'majority of the minority vote' voting requirement").

     Under Cayman law, the Merger would need to be approved by two thirds of the shares present at a special meeting called to consider the proposal.  The Buyer Group, together with

---

[2] On January 15, 2020, just before Covid-19 became endemic in China and paralyzed much of its economy, the Company's share price traded as high as $91.75.

1    Recruit's support, controlled 56.1% of the vote. *Id*. at 7. This means the Buyer Group, if allowed to

2    vote, would need to garner only a small percentage of the unaffiliated shareholders to ensure

3    approval of the Merger.  Thus, the Special Committee should have insisted that the Buyer Group

4    abstain from voting to approve the Merger.  Because the Special Committee failed to do so,

5    shareholder approval of the Merger was almost a foregone conclusion.  And while the Merger

6    agreement purported to require a 30-day post-shop period, the Buyer Group, which comprised a

7    majority of the voting shares, had agreed contractually not to vote for any alternative transaction. *Id*.

8    at 142-43.  This assured no market interest for an alternative proposal.

9         On July 6, 2021, the Company filed a Schedule 13E-3 form and draft proxy statement,

10   which incorporated Duff & Phelps's fairness opinion, with the Securities and Exchange

11   Commission (the "SEC") in support of the original Merger proposal.  *See* Wang Decl. Ex. E.

12   Kathleen Chien signed this filing in her personal capacity. *Id*. at 1 and 20. The proxy statement

13   included in this filing projected a Merger closing date in the second half of 2021.  *See* Wang Decl.

14   Ex. C at 62-63.  However, subsequent to the filing of the Schedule 13E-3 form, the Company

15   ceased communications with its shareholders regarding the Merger proposal.  This unusual and

16   unexplained radio silence caused the Company's share price to drop to as low as $60 per share.

17        On November 8, 2021, approximately four months after the filing of the Schedule 13E-3

18   form, the Company finally issued a press release vaguely disclosing that certain members of the

19   Buyer Group had been in consultation with Chinese regulators on the "recent regulatory changes" in

20   China that might be applicable to the Merger proposal.  *See* Wang Decl. Ex. I.  This overdue press

21   release did not explain what "regulatory changes" it was alluding to.  By then, the Company's

22   shares closed as low as $43 per share, due in large part to the lack of transparency concerning the

23   status of the Merger.  Neither the Company nor the Buyer Group has ever offered an adequate

24   public explanation regarding this purported need to consult with Chinese authorities and the

25   resulting significant delay in closing the Merger.

26        On January 12, 2022, the Buyer Group revised its offer to take the Company private by

27   reducing Merger consideration to $57.25 per share.  Wang Decl. Ex. D at 51.  This new offer

28   represented a drastic 28% reduction from the original offer price of $79.05 (which in the view of the

6

Dissenting Shareholders was already a woefully inadequate consideration).  Then, on March 1, 2022, the Company announced it had agreed to a revised Merger price of $61 per share, which was a 23% decrease from the original Merger price (and 34% lower from the Company's pre-pandemic trading price of $91.75) and reflected only a modest increase from the Buyer Group's lowball offer from January 2022.  *Id.* at 54-55.  Duff & Phelps provided an updated fairness opinion for the revised Merger deal.  *Id.* at 75-78.  Despite the fact that the Merger price fell significantly outside the range of fair value ($73.18 to $86.94) provided in Duff and Phelps's original fairness opinion from only six months earlier, Duff & Phelps's updated fairness opinion concluded that the revised deal terms were fair.  *Id.* at 267. The Company never explained the purported legal basis under which the Buyer Group reneged on the earlier Merger proposal and why the Company took no legal action against the Buyer Group for breaching that legally binding agreement.

The revised Merger agreement again contained no MoM Protection.  *Id.* at 49.  Based on the revised Proxy Statement, it appears that this issue was not seriously revisited by the Special Committee even though the deal terms were now even less favorable to the public shareholders. And while the Merger agreement was subject to a (materially shortened) 15-day go-shop period that began on March 1, 2022, again no interested bidders emerged as a result of the Buyer Group's publicly announced refusal to consider an alternative transaction.  *See id.* at 53-55.

On March 29, 2022, the Company filed a revised Schedule 13E form with the SEC. Wang Decl. Ex. F.  Kathleen Chien once again signed this filing in her personal capacity.  *Id.* at 1 and 23. The filing included a finalized Proxy Statement; that statement had a recommendation from the Board of the Company that shareholders vote in favor of the revised Merger offer. Wang Decl. Ex. D at 61.  The Proxy Statement also included an assertion from Ms. Chien and other Participants (who would be owners of the Company if the Merger was implemented) that the Merger was "both substantively and procedurally fair to" the public shareholders.  *Id.* at 62.

An extraordinary general meeting of the Company's shareholders was held on April 27, 2022.  Given that the Buyer Group controlled a majority of the voting shares, the Merger was predictably approved by the Company's shareholders. Wang Decl. Ex. J. The Merger was officially

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

1  consummated on May 6, 2022, and the Company was delisted from the NASDAQ exchange. Wang

2  Decl. Ex. K.

3          **B.      Respondents' Central Roles in the Merger**

4          Both Kathleen Chien and Linda Chien were directly involved in the implementation and

5  execution of the Merger. Kathleen Chien is a United States citizen.[3] Wang Decl. Ex. D at 18. As

6  noted, she is a co-founder, Chief Operating Officer, shareholder, and since 2009, long-standing

7  "acting" Chief Financial Officer of the Company. *Id.* She joined the Company in 1999 and served

8  as its Chief Financial Officer from 2004 to March 2009, when she was promoted to Chief Operating

9  Officer. *Id.* at 281; Wang Decl. Ex. P. Her successor as Chief Financial Officer resigned in

10  November 2009 under unexplained circumstances, after an eight-month tenure, and Ms. Chien had

11  since been continuously designated as the Company's "acting" Chief Financial Officer. Wang Decl.

12  Ex. Q.

13          Kathleen Chien was involved in the Merger from its earliest stages.  According to the Proxy

14  Statement, on September 16, 2020, only two days after the Company engaged Rocketeer

15  Management as a strategic consultant to explore options for the Company, Ms. Chien and Mr. Yan,

16  the Company's CEO who would, like Ms. Chien, become a member of the Buyer Group,

17  participated on a call with DCP.  Wang Decl. Ex. D.  at 41. The next day, DCP submitted a proposal

18  to take the Company private. *Id.* The Proxy Statement further disclosed that on April 13, 2021, Ms.

19  Chien, notwithstanding the obvious conflict of interest, participated on a call with the Special

20  Committee. In the course of that call, Ms. Chien "noted that DCP and Ocean Link remained

21  interested in pursuing the Proposed Transaction and requested to continue conducting due diligence

22  on the Company, and that Mr. Yan and Recruit were still considering their respective roles in the

23  _____

24          [3] Petitioner cannot find any publicly available information confirming Linda Chien's
   citizenship status.  But Petitioner notes that both Kathleen Chien and Linda Chien immigrated to the

25  United States from Taiwan with their parents as children, apparently grew up in this District and
   then went to college and graduate school in the United States. It may be inferred that the entire

26  Chien family naturalized as American citizens when Kathleen Chien and Linda Chien were still
   teenagers.  As the Supreme Court has noted, "[i]t is also beyond controversy that one of the duties

27  which the citizen owes to his government is to support the administration of justice by attending its
   courts and giving his testimony whenever he is properly summoned." *Blackmer v. United States*,

28  284 U.S. 421, 438 (1932). It is therefore fair, equitable, and proper to require the Chien sisters to
   comply with a discovery statute enacted by Congress.

1  Proposed Transaction, including whether to roll over any portion or all of their respective stakes in

2  the Company and/or join DCP and/or Ocean Link to form a consortium." *Id.* at 45.

3       The Proxy Statement identifies Ms. Chien as a Participant in the Merger. *Id.* at 22.

4  According to the Company, "[t]he purpose of the Merger is to enable Participants to acquire 100%

5  control of the Company."  *Id.* at 9.   Ms. Chien is one of the five "Management Continuing

6  Shareholders" and as such she was a party to a support agreement (the "<u>Support Agreement</u>") that

7  required her to vote her personal shares in the Company in favor of the Merger. As noted, the

8  Management Continuing Shareholders, along with Recruit, controlled 56.2% of the total

9  outstanding shares of the Company and their refusal to recuse themselves from voting all but

10  assured passage of the highly problematic Merger. The Support Agreement further required the

11  Company to repurchase 1,426,258 Company shares (valued at $87.0 million) held by Kathleen

12  Chien at the effective time of the Merger in exchange for ownership in the newly private Company.

13  *Id.* at 93. Ms. Chien most likely participated in crafting the recommendations of the Board and the

14  Participants, as reflected in the Proxy Statement, that the Merger was in the best interests of the

15  public shareholders of the Company.

16       Petitioner understands that Kathleen Chien serves as a director of the Company after the

17  consummation of the Merger.

18       Linda Chien is a Vice President in Investor Relations for the Company and therefore was

19  likely deeply involved in discussions with other senior officers as to the extent of non-public

20  information relating to the Company, its finances, and the Merger, to disclose to the market,

21  including during the extended Merger negotiations process and after an agreement was in place and

22  before the shareholder vote to approve the Merger. For example, she is likely to have relevant

23  information regarding the failure of the Company to communicate with investors for months after

24  the filing of the initial proxy statement with the SEC. Linda Chien is also likely to have directly

25  learned important information related to the Merger from Kathleen Chien, her sister.

26       **C.    The Appraisal Proceeding**

27       On July 15, 2022, the Appraisal Proceeding was commenced in the Cayman Islands under

28  Section 238.  Dawson Decl. Ex. 4.  Petitioner (along with the other Dissenting Shareholders) and

9

the Company each have retained and disclosed a valuation expert to assist the Cayman Court in arriving at a fair valuation of 51job shares.  Dawson Decl. ¶ 11.

Under Cayman law, when determining fair value, the court may examine both intrinsic valuation issues related to 51job and, as it relates to the fairness of the deal price, the procedural fairness and robustness of the Merger process from which it resulted.  *Id.* ¶¶ 14-20.  Petitioner and the other Dissenting Shareholders will have the opportunity to present, *inter alia*, documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Cayman Court. Cayman law permits litigants to obtain discovery from third parties located in the Cayman Islands, but Cayman courts do not have the power to compel discovery from third parties, such as Kathleen Chien and Linda Chien, who are located elsewhere and not subject to Cayman jurisdiction.  *Id.* ¶¶ 28-30.

Accordingly, Petitioner seeks leave of this Court to serve the Subpoenas on Respondents for documents, information, and deposition testimony related to the Merger for use in the Appraisal Proceeding.  Given Respondents' central roles in connection with the Merger, Petitioner seeks documentary discovery and testimony from them on issues directly relevant to the Appraisal Proceeding, including, without limitation: (i) the fairness of the original Merger price and the revised Merger price; (ii) the rationale for failing to force the Buyer Group to comply with the original Merger agreement, renegotiating with the Buyer Group and accepting the revised lower Merger price, (iii) the process leading to the approval of initial and final prices for the Merger; (iv) financial analysis, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by or provided to Respondents; (v) the lack of MoM Protection; (vi) Kathleen Chien's signing of the Support Agreement, and (vii) alternative bids to acquire the Company, if any.

## ARGUMENT

## I.   THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

Section 1782 authorizes a U.S. court to order any person that resides in or is found in its judicial district to give testimony or produce documents for use in a foreign proceeding upon the application of any person with an interest in that proceeding.  28 U.S.C. § 1782(a).  *Id.*; *see also*

10

1   *Intel*, 542 U.S. at 249.  Section 1782 "has, over the years, been given increasingly broad

2   applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)

3   (internal quotation marks omitted).  The twin purposes of Section 1782 are to "provide 'equitable

4   and efficacious' discovery procedures in United States courts for the benefit of tribunals and

5   litigants involved in litigation with international aspects" and to encourage foreign courts to

6   reciprocate for U.S.-based litigation and parties.  *Id*. (internal quotation marks omitted).

7        The Application easily satisfies all three statutory elements.

8        **A.      Respondents "Reside" or Are "Found" in This District**

9        With respect to natural persons, courts in this Circuit have determined that Section 1782's

10   requirement that a respondent "reside[s] or is found" in a district is satisfied when a person is a

11   resident of the district.  *See, e.g.*, *Ex parte Rigby*, No. 13CV0271-MMA MDD, 2013 WL 622235 *2

12   (S.D. Cal. Feb. 19, 2013) (a person residing in the Southern District of California was required to

13   respond to a Section 1782 application filed in that district); *In re MoneyOnMobile, Inc.*, 2019 WL

14   2515612, at *2 (N.D. Cal. June 18, 2019) (a person who lived "Cupertino, California" was properly

15   subject to a Section 1782 application filed in the Northern District of California).[4]

16        Under this standard, both Kathleen Chien and Linda Chien reside in this District. *First*,

17   public records and reliable commercial databases establish that both Respondents own and live in a

18   home located at 6723 Kings Harbor Dr., Rancho Palos Verdes, CA (the "Kings Harbor Home") in

19   this District. Wang Decl. ¶24; Ex. N. *Second*, Respondents are claiming a $7,000 homeowners'

20   property tax exemption for the Kings Harbor Home. *Id.* ¶ O. As a matter of California state law, that

21   exemption is available only to a taxpayer's principal place of residence. California Revenue & Tax

22   Code § 218(a). Courts have held that claiming that exemption is sufficient to establish a

23   homeowner's domicile in California.  *McMahon v. NBS Default Servs., LLC*, No.

24

25   ───────────

[4] Other courts have concluded that, for purposes of Section 1782, whether a person or entity is "found" in a district is coextensive with the constitutional parameters of personal jurisdiction.  *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("We hold, accordingly, that § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process.").  The facts recited herein would satisfy this test too in light of Respondents' extensive contacts with this District, as discussed herein. *See In In re Wireless Facilities, Inc. Derivatives Litig.*, 562 F. Supp. 2d 1098, 1103 (S.D. Cal. 2008) (applying the "continuous and systematic" test for personal jurisdiction).

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

217CV2493TLNEFBPS, 2018 WL 4328304 at *3, (E.D. Cal. Sept. 11, 2018), *report and recommendation adopted*, No. 2:17-CV-2493-TLN-EFB, 2018 WL 4698327 (E.D. Cal. Sept. 28, 2018). *Third*, Kathleen Chien has a drivers' license and a vehicle registered to the Kings Harbor Home, and she also receives her mail at the Kings Harbor Home. Wang Decl. ¶ 25. These facts centering around the Kings Harbor Home and Respondents' relationships with it are more than enough to establish that Respondents "reside in" or are "found" in the Central District of California.

Alternatively, to the extent that Kathleen Chien denies that this aforementioned body of convincing evidence establishes her domicile in California, she is still unmistakably subject to the specific personal jurisdiction of the federal court system because of her direct personal role in the Merger. *See* F.R.C.P. 4(k)(2) (measuring jurisdictional contacts on a national basis).

It is settled law that participating in the trading of securities on a U.S. based exchange subjects a person to specific jurisdiction in the United States. A court approved a 1782 application against two European banks in *Pfaff v. Deutsche Bank AG*, 2020 WL 3994824 (S.D.N.Y. July 14, 2020). The *Pfaff* court found that even though the banks' employees were not physically in the United States to execute the trades, their remote participation in a U.S. exchange was a forum contact sufficient to confer jurisdiction. *Id*. at *10 ("While Petitioner does not contend that Moving Respondents executed their trades from New York, the trades for which Petitioner seeks discovery, occurred largely through COMEX, which operates in New York, New York.").

Outside of Section 1782, a court has also held that the former chief executive officer of a Greek-based company listed on the New York Stock Exchange was subject to specific personal jurisdiction for legal claims arising from the company's repurchase of his shares, even though the defendant was never in New York for the transaction. *In re Aegean Marine Petroleum Network, Inc.*, *Securities Litigation*, 529 F.Supp.3d 111, 139 (S.D.N.Y 2021). The Court explained:

> The reason for this conclusion is that the Repurchase, in the context of the Section 20A claim, was aimed at the United States. Aegean stock traded only on the NYSE and Aegean's transfer agent is located in Colorado. Unlike the business transactions that could readily occur entirely overseas, this one could not be effected anywhere other than in the United States. Facilitating a $100 million stock buyback of shares that trade on the NYSE, constituting over 20% of shares outstanding, created a "near

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

certainty that United States shareholders ... would be adversely affected" by [Defendant's] actions.

*Id.* (internal citations omitted). Here, Kathleen Chien, in her role as a senior corporate officer of the Company, personally orchestrated the Merger, a complex a $4.3 billion transaction which was effectuated through involuntary purchases of shares held by the public shareholders of a company that traded on the NASDAQ exchange and the eventual delisting of that company.  To consummate that transaction, Ms. Chien signed in her personal capacity the legally binding Support Agreement (i) to cast her shares to support the Merger proposal at a shareholders meeting, and (ii) for the Company to repurchase her original shares in the Company in exchange for new ownership stakes in the now private entity. As a United States citizen, her extensive contacts with her country of nationality to effectuate the Merger are more than sufficient to subject her to federal court jurisdiction and to compel her to provide the requested discovery for use in the Appraisal Proceeding.

Accordingly, the Application satisfies Section 1782's first statutory requirement.

**B.      Petitioner Seeks Discovery "For Use" in a Foreign Proceeding**

Petitioner will use the requested discovery in the Appraisal Proceeding to establish the fair value of its 51job shares.  Courts in the United States have held that seeking discovery for use in appraisal actions in the Cayman Islands satisfies the statutory requirement of "for use" in a "foreign proceeding."  *See, e.g.*, *In re Kingstown Partners Master Ltd.*, No. 21-MC-691-LTS, 2022 WL 1081333, at *4-5 (S.D.N.Y. Apr. 8, 2022) (standard met for dissenters in Cayman appraisal action even after deadline for expert reports on valuation had expired); *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding by Athos Asia Event Driver Master Fund*, No. 4:21-mc-00153-AGF, 2021 WL 1611673, at *2 (E.D. Mo. Apr. 26, 2021) (dissenting shareholders in a Cayman appraisal case "clearly seek discovery of materials 'for use' in a foreign proceeding").

Furthermore, to satisfy the statutory "for use" requirement, a petitioner is not required to demonstrate that the discovery sought would be discoverable or admissible in the foreign proceedings.  *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d

13

720, 723 (9th Cir. 1977) ("admissibility before such tribunals of the testimony or material sought" was not a proper factor to evaluate); *In re Michael Eric A.B. Mak*, No. C 12–80118 SI, 2012 WL 2906761, at *1 (N.D. Cal. July 16, 2012) (whether the proposed discovery "would be admissible in Hong Kong's Courts is therefore not an issue in the instant request for discovery."). Rather, a petitioner must simply show that the discovery being sought is "tethered to a specific foreign proceeding and is relevant." *Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782*, No. 18-mc-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018).

The discovery requested by Petitioner is relevant to the determination of the fair value for the Dissenting Shareholders' 51job shares and will be used solely for the Appraisal Proceeding.[5] Petitioner intends to provide, consistent with the routine practice in Cayman appraisal litigation, the documents and deposition testimony obtained from this Application to its expert and the competing expert appointed by the Company.  The Cayman Court will rely heavily on the testimony of those experts.  *See* Dawson Decl. ¶ 13.  This clearly satisfies the "for use" requirement.

Therefore, the Application satisfies Section 1782's second statutory requirement.

### C.    Petitioner Is an "Interested Person"

"[A] complainant in a foreign proceeding 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of that term." *Akebia Therapeutics,* 2014 WL 12845006 (quoting *Intel*, 542 U.S. at 256).  Because parties to foreign proceedings are "interested persons" under Section 1782, Petitioner, a party to the Appraisal Proceeding, qualifies as an "interested person" for the purposes of this Application.  *Id.*

Accordingly, the Application also satisfies Section 1782's third statutory requirement.

## II.    The Discretionary *Intel* Factors Weigh in Favor of Granting the Application

Once Section 1782's statutory requirements are met, this Court has discretion to grant the Petition. *Intel*, 542 U.S. at 264.  In determining whether to grant the Application, the Court should

---

[5] There is no question that the Cayman Court constitutes a "foreign tribunal" within the meaning of Section 1782.  *In re Application of Akebia Therapeutics, Inc. for an Order Granting Leave to Issue Subpoena for the Taking of Discovery Pursuant to 28 U.S.C. 1782.*, No. CV 14 80294 MISC, 2014 WL 12845006 (N.D. Cal. Oct. 21, 2014) ("In the Ninth Circuit, Section 1782 is read broadly to include 'bodies of a quasi-judicial or administrative nature' as well as preliminary investigations leading to judicial proceedings.").

14

1   look to the four *Intel* factors.  *Id.* at 244-245.  All four of these factors strongly favor granting the

2   Application.

3       **A.      *Intel* Factor I: Respondents Are Nonparticipants in the Appraisal Proceeding**

4       The Supreme Court has explained that when a respondent is not a party to the foreign

5   proceeding, "[its] evidence, available in the United States, may be unobtainable absent § 1782(a)

6   aid."  *Intel*, 542 U.S. at 264.  That is precisely the situation here: Neither Kathleen Chien or Linda

7   Chien is a party to the Appraisal Proceeding.  Moreover, both Respondents are beyond the

8   jurisdictional reach of the Cayman courts.  Dawson Decl. at ¶¶ 29-30.  This means that Petitioner

9   has no practical way to obtain the highly relevant evidence in Respondents' possession, custody or

10  control, other than discovery by way of Section 1782.

11      Accordingly, the first *Intel* factor—which asks whether the party from whom the discovery

12  is sought is a party to the foreign proceeding—strongly supports granting the Application.  *In re*

13  *Wallis*, No. 18-mc-80147-DMR, 2018 WL 5304849, at *4 (N.D. Cal. Oct. 24, 2018) (finding that

14  the first *Intel* factor weighed in favor of issuing the subpoenas because none of the respondents

15  were participants to the litigation and the discovery by the proposed subpoenas is currently outside

16  the reach of the foreign court); *In re Koninklijke Philips N.V.*, 2018 WL 620414, at *2 (S.D. Cal.

17  Jan. 30, 2018) ("Here, Respondent is not a party to the foreign proceeding. Thus, this factor weighs

18  in favor of granting the Application."); *In re Republic of Ecuador*, No. C-10-80225 MISC CRB

19  (EMC), 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Respondent] is not a party in the

20  international arbitration, and therefore this factor weighs in the [petitioner's] favor.").

21      **B.      *Intel* Factor II: The Cayman Court Is Receptive to U.S. Judicial Assistance**

22      Under the second *Intel* factor, courts may "take into account the nature of the foreign

23  tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

24  government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S.

25  at 264.  For this factor to count against discovery, a respondent in a Section 1782 application is

26  required to submit "authoritative proof" that the foreign jurisdiction is not receptive to discovery

27  assistance from the United States. *Siemens AG v. W. Digital Corp.*, No. 8:13–cv–01407–CAS–

28  (AJWx), 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013).

15

Respondents cannot meet this heavy burden. As explained in the Dawson Decl., Cayman courts are receptive to using evidence obtained through US discovery procedures.  Dawson Decl. ¶¶ 21-26.  Indeed, the Cayman Islands Court of Appeal ("CICA") expressly held in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, [2009 CILR 553] that the right to obtain full discovery, including pre-trial deposition testimony, under Section 1782 "is a right conferred by U.S. law-it is *not a right* conferred by, or *to be withheld under Cayman law*." *Id*. ¶¶ 22-24 (citing *Lyxor* and emphasis added here).  Moreover, the CICA has underscored that third-party materials are relevant in Section 238 proceedings.  *Id*. ¶ 21 (quoting *Re Qunar Cayman Islands Limited* (Unreported, CICA, April 10, 2018, CICA No 24 of 2017) for the proposition that "if third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company. . . .").   CICA decisions are binding on the Cayman Court.  *Id*. ¶ ¶15, 22.

As noted, the Cayman Court will consider all evidence that may be relevant to the valuation of the shares at issue in the Section 238 proceeding.  Dawson Decl. ¶¶ 13-20.  For example, the CICA held in *Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585 that "[t]he sole task of the court is to determine the fair value of the dissenters' shares. To do that, it needs full information." *Id.* ¶ 15 (discussing *Qihoo*) and Exhibit 8 to Dawson Decl.  This process of considering all relevant information often requires significant discovery.  As the CICA noted in *Shanda Games Limited* [2018 (1) CILR 352], "[s]ince the fair value is not necessarily the same as the merger price or the price at which the shares were trading before the market in them was affected by knowledge of the merger, it is inevitable that the determination will involve an assessment of a substantial quantity of information relating to the financial affairs of the company whose shares are to be valued." *Id.* ¶ 15 and Ex. 7 to Dawson Decl.

The Cayman Court will also consider evidence as to whether the deal process itself was open, competitive, and fair.  *See* Dawson Decl. Ex. 1 (*In the Matter of Nord Anglia Education, Inc.* (Unreported, 17 March 2020)) (considering several conduct-related factors when considering the reliability of the deal price as a guide to the fair value of the dissenting shareholders' shares); *see also* Dawson Decl. Ex. 2(*In the Matter of Trina Solar Limited* (Unreported, Grand Court, Segal J, 23 September 2020)) (same).

16

Furthermore, U.S. courts, including this Court, have consistently recognized that Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be independently discoverable or available under Cayman law.  *FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 1:21-mc-1019-CAS (JPR), ECF No. 56 (C.D. Cal. Jan. 6, 2022) (granting document and deposition discovery for use in Cayman Islands appraisal proceeding) (Wang Decl., Ex. L);  *In re Hopkins*, No. 20-mc-80012-SVK, 2020 WL 733182, at *3 (N.D. Cal. Feb. 13, 2020) (granting application where "there is no indication that the Cayman Islands court would not be receptive to the information sought by [petitioner].");  *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law") (citations omitted); *In re Penner*, No. 17-cv-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (Cayman court "is open to receiving § 1782 discovery").

Here, the Cayman Court, in a Directions Order entered in the Appraisal Proceeding following a hearing, acknowledges the possibility that foreign discovery applications, including applications under Section 1782, may be brought and requires applicants to "make all reasonable efforts to do so expeditiously."  Dawson Decl. Ex. 5 at ¶ 47; *see also id*. ¶¶ 47-48, 50-52 (setting forth timing and procedural requirements regarding the filing of third-party discovery applications); Dawson Decl. ¶ 25 (the Cayman Court "considered and approved of the prospect of parties seeking relief under Section 1782").  As a result, there can be no plausible argument that the Cayman Court is not open to Section 1782 discovery in the Appraisal Proceeding.

Accordingly, the second *Intel* factor weighs heavily in favor of granting the Application.

## C.    *Intel* Factor III: The Application Is Not an Attempt to Circumvent Cayman Law

The third *Intel* factor asks "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country."  *See Intel*, 542 U.S. at 264-265.  This factor supports discovery unless the foreign court affirmatively disallows the petitioner from obtaining the discovery sought. *In re Koninklijke Philips*, 2018 WL 620414, at *2

17

1   (The third *Intel* factor met because "Applicant is unaware of any English rule or policy that

2   prohibits the gathering of the evidence sought."); *see also In re Hattori*, No. 21-mc-80236-TSH,

3   2021 WL 4804375, at *4 (N.D. Cal. Oct. 14, 2021) (discovery is favored "unless the foreign

4   tribunal in question has expressly made it clear that it would not accept the evidence.").

5        As explained in Section II.B, the Cayman Court welcomes evidence that a party can obtain

6   by using Section 1782.  There is no Cayman law or Cayman decision that would prohibit the

7   introduction of Section 1782 evidence.  Dawson Decl. ¶ 21.  Nor has the Cayman Court denied a

8   request for the discovery sought by this Application.[6]  *Id.*

9        Accordingly, the third *Intel* factor also weighs in favor of granting the Application.

10       **D.      *Intel* Factor IV: The Discovery Sought Is Not Unduly Burdensome**

11       Under the fourth *Intel* factor, a court may consider whether the discovery requests are

12  "unduly intrusive or burdensome" and should be "rejected or trimmed."  *Intel*, 542 U.S. at 265.  The

13  standard used to evaluate whether a discovery request is burdensome is the same standard that

14  applies to any federal civil litigation.  *In re Credit Suisse Virtuoso*, No. 21-mc-80308-JCS, 2022

15  WL 1786050, at *12 (N.D. Cal. June 1, 2022) ("The proper scope of [discovery] under § 1782 is

16  generally determined by the Federal Rules of Civil Procedure.").  Under this standard, discovery

17  must be "proportional to the needs of the case, considering the importance of the issues at stake in

18  the action, the amount in controversy, the parties' relative access to relevant information, the

19  parties' resources, the importance of the discovery in resolving the issues, and whether the burden

20  or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

21  Generalized assertions about burden are not sufficient; respondent must instead establish undue

22  burden with specificity.  *In re Nouvel*, LLC, No. 2:22-MC-00004-MCS-E, 2022 WL 2901715, at *5

23

24       [6] Petitioner does not have to exhaust discovery efforts in the foreign proceeding before
resorting to Section 1782.  *De Leon v. Clorox Company*, No. 19-mc-80296-DMR, 2020 WL
25  4584204, at *8 (N.D. Cal. Aug. 10, 2020) (no requirement to first seek discovery in foreign
tribunal); *In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*, No. C18-1673JLR, 2019
26  WL 291673, at *5 (W.D. Wash. Jan. 23, 2019) ("[A]n applicant need not exhaust, or even
commence, its discovery efforts in the foreign proceeding before resorting to § 1782.").  Moreover,
27  the Court is not required to determine whether the evidence obtained from Respondents would be
discoverable or admissible in the foreign proceedings.  *In re Mireskandari*, No. 12-cv-2865-IEG
28  (DHB), 2012 WL 12877390, at *3 (S.D. Cal. Dec. 20, 2012).

18

1   (C.D. Cal. July 22, 2022) ("Conclusory, unsupported statements of expense and burden are

2   insufficient to demonstrate why the requested discovery is objectionable.").

3           The discovery requested by Petitioner here fully complies with the standard of

4   proportionality and reasonableness.  The topics set forth in the Subpoena are consistent with the

5   discovery granted in comparable recent cases.  *See, e.g.*, *Kingstown*, 2022 WL 1081333, at *6

6   (scope of discovery was appropriate given "the substantial amount in controversy in the FGL

7   Appraisal, Respondents' access to information relevant to that proceeding, and the parties'

8   resources."); *In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *3 (D. Del.

9   Aug. 26, 2021) ("The scope of the categories of subject matter sought by the subpoena is reasonable

10  given the nature of and BofA Securities' role in the transactions at issue in the appraisal action.").[7]

11  The Merger was a complex $4.3 billion corporate transaction and the Subpoenas are designed to

12  seek only documents and information directly relevant to core issues in the Appraisal Proceeding

13  and to which Respondents have access, including: (i) the fairness of the original Merger price and

14  the revised Merger price, and the process leading to their approval by the Special Committee and

15  the Company's Board; (ii) why the Company permitted the Buyer Group to renege on the initial

16  Merger proposal without taking legal action; (iii) financial analysis, email or other correspondence,

17  meeting minutes, and any other materials used, reviewed, or prepared by, or provided to

18  Respondents; (iv) Kathleen Chien's signing of the Support Agreement; (v) Respondents'

19  communications with all other key stakeholders; (vi) any alternative bids to acquire the Company;

20  and (vii) the shareholders' approval of the Merger, including the absence of MoM Protection.

21

22

23

24  _____

25  [7] Courts commonly order production of responsive discovery that a respondent has in his or her possession, custody, or control, regardless of the physical location of that discovery, especially for

26  documents and information that are located in electronic storage that can be accessed from any location.  *See, e.g.*, *De Leon*, 2020 WL 4584204, at *5-6; *Illumina Cambridge Ltd. v. Complete*

27  *Genomics, Inc.*, No. 19-mc-80215-WHO(TSH), 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020); *del Valle Ruiz*, 939 F.3d at 532-533 (Section 1782 may apply outside the United States). To

28  the extent that Respondents have responsive documents located outside the United States, they are obligated to produce them.

1   These issues will be central in the Appraisal Proceeding and are appropriately subject to discovery

2   through Section 1782. [8]

3         As for the requested deposition testimony, courts in this Circuit have found that depositions

4   "are standard practice in U.S. civil litigation and are not burdensome."  *In re Illumina Cambridge*

5   *Ltd.*, No. 19MC80215WHOTSH, 2019 WL 5811467, at *5 (N.D. Cal. Nov. 7, 2019); *see also*

6   *Mireskandari*, 2012 WL 12877390, at *4 ("The Court finds that these deposition topics are

7   appropriate, as they are relevant to Applicant's claim.").  This finding is based on the presumption

8   that "[t]he Rules of Civil Procedure themselves ensure that the length, time and place of the

9   deposition do not impose an undue burden."  *See HRC-Hainan Holding Co., LLC v. Yihan Hu*, No.

10  19-mc-80277-TSH, 2020 WL 906719, at *15 (N.D. Cal. Feb. 25, 2020) (citing Fed. R. Civ. P.

11  45(d)(1)).  Deposing both Respondents will yield relevant testimony that will significantly aid the

12  Cayman Court in determining the fair value of the Dissenting Shareholders' involuntarily

13  extinguished stakes in the Company.  As noted by Mr. Dawson, the Cayman Court has the

14  discretion to admit U.S. style deposition transcripts. Dawson Decl., ¶¶ 22, 24, 31-33.  Indeed,

15  transcript from a Section 1782 deposition was admitted recently in a Cayman appraisal proceeding.

16  *Id.* at ¶ 33.

17        While Petitioner does not foresee any burden issues in light of the Subpoenas' reasonable

18  scope, Petitioner is willing to meet and confer in good faith with Respondents to address any

19  concerns that he may have.[9]  Accordingly, the fourth *Intel* factor weighs in favor of granting the

20  Application.

---

22  [8] The potential but uncertain possibility that Petitioner *may* obtain some of the discovery requested herein from a party in the Appraisal Proceeding is not a basis to deny this Application.

23  This Court already held that a Section 1782 petitioner was "entitled to, just as someone would be in conducting discovery in a regular civil case in the United States, to test two productions against each other and . . . to ask you for documents to ensure that . . . what they are getting from the

24  Company is exhausted and vice versa." *FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21- mc-1019, ECF No. 40, at 26-27 (C.D. Cal. Nov. 22, 2021) (Wang Decl. Ex. M at 27).

25  [9] For example, Petitioner is open to deposing Respondents through an electronic platform to reduce any supposed burden on them. In addition, approving this Application will not preclude

26  either Respondent from meeting and conferring with Petitioner or ultimately "from bringing a motion to quash or modify" the discovery sought if no agreement is reached. *In re: Application of*

27  *Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *7 (N.D. Cal. Nov. 2, 2016).  Courts expect parties in the first instance to attempt to resolve their differences without

28  judicial intervention regarding the scope of a subpoena.  *See De Leon*, 2020 WL 4584204, at *9.

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant the Application for an order pursuant to 28 U.S.C. § 1782 and grants any and all other relief to Petitioner as the Court deems just and proper .

Dated: April 10, 2023        By:     */s/ Marc S T Dworsky*
                                    **REID COLLINS & TSAI LLP**
                                    Marc S T Dworsky (State Bar No. 157413)
                                    4450 Via Alegre
                                    Santa Barbara, CA 93110
                                    (626) 429-4022
                                    mdworsky@reidcollins.com

                                    **REID COLLINS & TSAI LLP**
                                    Minyao Wang*
                                    Yonah Jaffe*
                                    420 Lexington Avenue
                                    Suite 2731
                                    New York, NY 10170
                                    (212) 344-5200
                                    mwang@reidcollins.com
                                    yjaffe@reidcollins.com

                                    **REID COLLINS & TSAI LLP**
                                    Jonathan M. Kass*
                                    300 Delaware Avenue, Suite 770
                                    Wilmington, DE 19801-6600
                                    (302) 467-1765
                                    jkass@reidcollins.com

                                    *Counsel for Petitioner*


                                    **LABATON SUCHAROW LLP**
                                    Ira A. Schochet*
                                    140 Broadway
                                    New York, NY 10005
                                    Telephone: (212) 907-0864
                                    Facsimile: (212) 883-7064
                                    ischochet@labaton.com

                                    *Additional Counsel*

                                    **Pro hac vice* applications forthcoming

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. § 1782